***********
Based upon the minor modifications to the Opinion and Award of Deputy Commissioner Harris to which the parties consented, the Full Commission affirms the Opinion and Award of Deputy Commissioner Harris with the minor modifications made and consented to by both parties and enters the following Opinion and Award.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which *Page 2 
were entered by the parties as:
 STIPULATIONS
1. The date of the injury that is the subject of this claim is April 1, 2008, which resulted in an accepted head injury.
2. Defendant denied compensability for Plaintiff's alleged left knee injury on a Form 61 dated February 16, 2009.
3. On such date, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
4. On such date, the employer-employee relationship existed between Plaintiff and Defendant-Employer.
5. On such date, Defendant-Employer employed three or more employees.
6. On such date, the carrier of workers' compensation insurance for Defendant-Employer was CorVel Corporation.
7. Plaintiff's average weekly wage in this claim is $548.43.
8. The parties participated in a mediated settlement conference on May 14, 2009, which was declared an impasse.
9. The Deputy Commissioner accepted the following stipulated documents into evidence at the hearing of this case:
 • Exhibit 1: Executed Pre-Trial Agreement
 • Exhibit 2: Industrial Commission forms
 • Exhibit 3: Plaintiff's medical records
 • Exhibit 4: Medical bills
 • Exhibit 5: Transcript of Plaintiff's recorded statement *Page 3 
 • Exhibit 6: Accident report
 *********** ISSUES TO BE DETERMINED
1. Whether Plaintiff sustained a compensable injury to his left knee on April 1, 2008?
2. If so, to what compensation, if any, is Plaintiff entitled?
 ***********
Based upon all of the competent and credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 38 years old, with a date of birth of July 16, 1973. He is a high school graduate and has completed some college courses. He served four years in the United States Marine Corps. As of the date of the hearing before the Deputy Commissioner, he had worked with Defendant-Employer for about nine years.
2. On May 23, 2007, Plaintiff was involved in a motor vehicle accident. Shortly after the accident, his knees began swelling, with worse symptoms in his left knee. Plaintiff last received medical attention for his knee problems on June 12, 2007, when it was noted that he was doing better, with a swift gait without impediment, and good range of motion in both knees, without pain, discomfort or limitation.
3. Following the May 23, 2007 accident, Plaintiff went on light duty at work for about one month; then he returned to full duty work. After his release from medical treatment on June 12, 2007, Plaintiff did not have problems with his knees until after the April 1, 2008 *Page 4 
accident that is the subject of this claim.
4. As of April 1, 2008, the date of injury in this claim, Plaintiff was a lead correctional officer at Pender Correctional Institution. His job duties included overseeing highway work crews made up of inmates who picked up litter and cleared brush along state highways and secondary roads.
5. Plaintiff was injured on April 1, 2008, when the prison work van in which he was riding was hit head-on by another vehicle while traveling on N.C. Highway 11 near Wallace, North Carolina.
6. After the accident, Plaintiff's first duty was to secure the inmate crew, and then to seek medical attention for any of the inmates who were injured. After the emergency and law enforcement personnel arrived, all the injured, including Plaintiff, were taken to Duplin General Hospital.
7. At the hospital emergency room, Plaintiff reported that he had a headache. He had a laceration on his forehead. Plaintiff was treated and released.
8. A few weeks after the April 1, 2008 accident, Plaintiff began to have pain in his left knee. The pain was achy and throbbing, and it started to affect his sleep. The pain also started to affect Plaintiff's work performance, in that he was not able to walk as far as he normally could while with the road crew. When Plaintiff did try to walk any significant distance, his left knee would bother him to the point that he would have to come off the road early.
9. Plaintiff's left knee problems after the April 1, 2008 accident involved pain that was more direct and in his left knee only, whereas after his May 2007 motor vehicle accident, his pain had been just general soreness in both knees.
10. Plaintiff initially took over-the-counter medications and expected that his left *Page 5 
knee pain would go away on its own with rest.
11. Plaintiff eventually scheduled an appointment with his primary care physician, Dr. Robert Kell, to have his left knee examined. Dr. Kell saw him on June 20, 2008 and recommended that he see a specialist.
12. Dr. Kell referred Plaintiff to Atlantic Orthopedics in Wilmington, where he first saw Dr. Colquhoun on November 24, 2008. Dr. Colquhoun suspected a meniscus tear and mild osteoarthritis, and ordered an MRI, which confirmed the diagnosis. Dr. Colquhoun recommended that Plaintiff undergo an arthroscopy.
13. Plaintiff underwent the left knee arthroscopy with Dr. Colquhoun on March 4, 2009.
14. Following the surgery, Dr. Colquhoun held Plaintiff entirely out of work from March 4, 2009 until he released Plaintiff to return to full duty with no permanent restrictions on April 6, 2009.
15. Plaintiff returned to work with Defendant-Employer on or about April 6, 2009 and was performing his regular duties as of the date of the hearing before the Deputy Commissioner.
16. As of the date of hearing, Plaintiff's left knee was doing well, with essentially no symptoms.
17. Plaintiff did not miss any time from work for his left knee condition before the arthroscopy, but he was out of work from March 4, 2009 through April 6, 2009 after the surgery. Plaintiff was forced to use sick leave while he was out of work following the surgery.
18. Dr. Colquhoun opined and the Full Commission finds as fact that the April 1, 2008 accident, at the least, caused a significant exacerbation of any underlying condition in *Page 6 
Plaintiff's left knee. Dr. Colquhoun further opined and the Full Commission finds as fact, that the April 1, 2008 accident caused the need for Plaintiff's March 4, 2009 arthroscopic surgery to his left knee.
19. Dr. Colquhoun confirmed that, when he looked at Plaintiff's left knee during the arthroscopy, he saw the meniscus tear, but not significant arthritis.
20. Dr. Colquhoun would not assign any permanent partial impairment ("PPI") rating for Plaintiff's left knee condition, because he could not say that Plaintiff would develop any arthritis post-surgically. He expected Plaintiff to do very well for a long time, and he did not feel a PPI rating was appropriate in this case. As such, Dr. Colquhoun executed a Form 25R showing a zero (0) percent PPI rating.
21. The Full Commission finds that the treatment Plaintiff received for his left knee condition, including, but not limited to, the treatment and diagnostic testing with Dr. Kell and Dr. Colquhoun, was reasonably required to effect a cure, provide relief and/or to lessen Plaintiff's period of disability.
22. Plaintiff's average weekly wage was $548.43, resulting in a compensation rate of $365.64.
23. The Opinion and Award by Deputy Commissioner Harris, to which the parties consented, found that the Defendant-Employer was to reinstate Plaintiff's sick leave used during the time he was eligible for salary continuation pursuant to N.C.Gen. Stat. § 143-166.17. Additionally, Deputy Commissioner Harris awarded an attorney's fee of 25% to be deducted from the portion due in salary continuation. This attorney's fee would be equivalent to approximately one week of full benefits, or $548.43.
24. The Full Commission finds that reinstatement of the sick leave Plaintiff used *Page 7 
during the time of surgery and recovery would provide adequate compensation for Plaintiff; however, there would be no funds available from which an attorney's fee could be deducted.
25. Defendant-Employer asserted a lien against any third-party recovery Plaintiff received as a result of the April 1, 2008 injury-by-accident. Defendant-Employer's lien totals approximately $2,200.
26. In order to resolve this matter, Defendant-Employer has agreed to a complete waiver of the subrogation lien, and Plaintiff's counsel has agreed to waive his attorney's fee.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff suffered a compensable injury by accident to his left knee on April 1, 2008. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff was totally disabled from work during the time he was out of work for surgery for his compensable left knee condition from March 4, 2009 through April 6, 2009; and, as a correctional officer, he is entitled to receive salary continuation for said period. N.C. Gen. Stat. §§ 97-2(9), 97-29 and 143-166.14.
3. Defendant-Employer should credit back to Plaintiff all of the sick leave that he took during the period that he was out of work for the surgery from March 4, 2009 through April 6, 2009. N.C. Gen. Stat. § 143-166.17.
4. Plaintiff is entitled to have Defendant pay for the medical treatment that he has received for his compensable left knee condition, including, but not limited to, the treatment and diagnostic testing with Dr. Kell and Dr. Colquhoun. N.C. Gen. Stat. §§ 97-2(19) and 97-25. *Page 8 
5. Plaintiff is entitled to have Defendant authorize and pay for any further treatment for his left knee condition as is reasonably required to effect a cure, provide relief and/or to lessen Plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19),97-25 and 97-25.1.
6. Plaintiff is not entitled to any permanent partial disability compensation at this time, as Dr. Colquhoun has assigned a zero (0) percent PPI rating for Plaintiff's left knee.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendant shall reinstate all of the sick leave that Plaintiff used during the period he was out of working due to his surgery from March 4, 2009 through April 6, 2009.
2. Defendant shall pay $0 in attorney fees, as this fee has been waived by Plaintiff's counsel.
3. Defendant shall be entitled to $0 reimbursement of its subrogation lien, pursuant to N.C. Gen. Stat. § 97-10, as this lien has been waived by Defendant.
4. Defendant shall, to the extent they have not already done so, pay for the medical treatment that Plaintiff has heretofore received for his compensable left knee condition, *Page 9 
including, but not limited to, diagnostic testing, surgery, prescriptions, physical therapy and mileage. To any extent that Plaintiff and/or any third-party payor has paid for such treatment, Defendant shall reimburse such payor(s) in full.
5. Dr. Colquhoun is hereby designated as Plaintiff's treating physician, and Defendant shall, subject to the limitations period of N.C. Gen. Stat. § 97-25.1, authorize and pay for any medical treatment he recommends for Plaintiff's compensable left knee condition, including, but not limited to, diagnostic testing, repeat arthroscopy, prescriptions, pain management, physical therapy, referrals and mileage.
6. No permanent partial disability award is payable at this time.
7. If they have not already done so, Defendant shall pay an expert witness fee to Dr. Colquhoun as ordered by Deputy Commissioner Harris on December 10, 2010.
8. Defendant shall pay all costs.
This the __ day of August, 2011.
 S/___________________
 BERNADINE BALLANCE
 COMMISSIONER
CONCURRING:
S/___________________ DANNY L. McDONALD COMMISSIONER
S/___________________
STACI T. MEYER COMMISSIONER
 *Page 1